FUNK & HARDMAN *v.* ISRAEL.

The exemption contemplated by section 1995 of the Code, extends only to the articles enumerated in sections 1898 and 1899, and was in-

Funk & Hardman v. Israel.

tended for the benefit of the particular parties indicated. WRIGHT, C. J., *dissenting*.

When proceedings are commenced under the "act for the suppression of intemperance," approved January 22, 1855, by the seizure of intoxicating liquors, alleged to be owned and kept for sale, in violation of law, it is not competent for a party to take the case away from the tribunal whose jurisdiction has attached, by instituting an action of replevin, and regaining possession of the liquors.

Where proceedings are in progress, under the prohibitory liquor law, to determine whether certain intoxicating liquors are liable to be forfeited, the liquors are not subject to an action of replevin. WRIGHT, C. J., *dissenting*.

Intoxicating liquors, kept for sale, in violation of law, are not regarded as property; and no action can be maintained for their recovery or possession, whether they are in the custody of the law or not. WRIGHT, C. J., *dissenting*.

While criminal proceedings are pending, to determine whether certain intoxicating liquors are liable to forfeiture, the liquors remain in the possession of the officer, in the custody of the law.

To authorize a court to dismiss a suit on motion, the motion to dismiss must be based upon matter appearing upon the face of the proceedings. No testimony outside of the record, can be introduced in support of the motion.

Where an action of replevin is dismissed, on motion of the defendant, he is not driven to his action on the bond, but is entitled to a judgment, for the return of the property replevied, or for its value. WRIGHT, C. J., *dissenting*.

Where in an action of replevin, to recover the possession of five barrels of "high wines," the petition alleged, that the defendant, by virtue of a search-warrant issued by the mayor of the city of Muscatine, seized and carried off the said property, and wrongfully detains the same; that plaintiffs are entitled to the present possession thereof; that, although the same was taken from them by a pretended legal process, yet that such property was exempt from seizure on such process; that the same was lawfully in possession of the plaintiffs, for the purpose of being manufactured into vinegar; and that the alleged cause of such detention, is that the property was kept by plaintiffs for the purpose of being sold as intoxicating liquors, in violation of the provisions of the "act for the suppression of intemperance," which alleged cause of detention is untrue; and where the district court, on motion of defendant, dismissed the action, for the reason, that the goods replevied were liquors which had been taken by defendant, under and by virtue of a warrant of seizure, issued under the provisions of the "act for the suppression of intemperance," approved January 22, 1855, and adjudged that plaintiff make return of the liquors to defendant, and in default thereof, that defendant recover of plaintiff the value of the liquors;

*Held,* That the court properly dismissed the action, and rendered judgment for the return of the property, or its value.

*Appeal from the Muscatine District Court.*

TUESDAY, JANUARY 12, 1858.

This was an action of replevin, to recover the possession of five barrels of "high wines," of the alleged value of $75. By the petition, it is averred that defendant, by virtue of a search warrant, issued by the mayor of the city of Muscatine, seized and carried off the said property, and wrongfully detains the same; that plaintiffs are entitled to the present possession thereof; that although the same was taken from them by a pretended legal process, yet that said property was exempt from seizure on such process, and was lawfully in possession of plaintiffs for the purpose of being manufactured into vinegar; and that the alleged cause of detention is, that the property was kept by plaintiffs, for the purpose of being sold as intoxicating liquor, in violation of the provisions of the "act for the suppression of intemperance," which alleged cause the plaintiffs aver to be untrue. The district court, on motion, dismissed the action, for the alleged reason, as shown by the record, that the goods replevied were liquors which had been taken by defendant, under and by virtue of a warrant of seizure, issued under the provisions of the "act for the suppression of intemperance," approved January 22, 1855. It was further adjudged, that plaintiffs make return of the liquors to defendant, and in default thereof, that defendant recover of plaintiffs the sum of seventy-five dollars, the admitted value of the same. From this order and judgment of the court, the plaintiffs appeal, and assign for error the following:

1. The court erred in trying the cause on the motion of defendant.

2. In hearing evidence in support of said motion.

3. In sustaining said motion.

Funk & Hardman v. Israel.

4. In not permitting plaintiffs to prove the facts set up in their petition.

5. In rendering judgment against plaintiffs, after the suit had been dismissed.

*Richman & Brother* and *J. R. Nisely*, for the appellant.

A motion is defined to be "an application to a court, by one of the parties in a cause, or his counsel, in order to obtain some rule or order of court, which he thinks becomes necessary in the progress of a cause, or to get relieved, in a summary manner, from some matter which would work injustice." When the motion is made on some matter of fact, it must be supported by an affidavit that such facts are true, but such affidavit cannot be read on the hearing. 1 Binn., 145; 2 Yates, 546; 3 Bl. Com., 304. Motions are of frequent occurrence in practice. Every practitioner has a general idea, of what can and what cannot be reached or accomplished by a motion; and yet it is difficult to put that idea into shape on paper. It is easier to say, negatively, what cannot, than what can be done by motion. Thus, it is self evident, that if A. commences a suit against B. and states a good cause of action in his petition, the court having jurisdiction of the parties, of the subject matter of the suit, and the parties being properly in court, that what ever defence B. may have—however good it may—he cannot avail himself of it, by motion; but must set it up in a form in which the plaintiff can reply to it. He must either deny the facts in the petition, or admit and avoid them, and this must be done by answer; and the issue formed by the pleadings, must be tried in some way known to the law. A motion to dismiss a cause, can only be made on account of some matter which would have that effect, apparent by inspection of the papers; or on account of some independent fact, outside of the record, and having nothing to do with the merits of the cause. A motion is usually made, in a civil cause, in relation to something which one party

may require the other to do—as to give security for costs—to perfect a bond—to produce books or papers, &c., but cannot perform the office which it assumes in this case.

The defendant may say, that it is not a motion, notwithstanding the record says it is, and notwithstanding the motion itself, discloses the fact. He may say that the second cause assigned for dismissing the suit, is a good answer to the petition, if true. This, we deny in fact, but supposing such to be the case, for a moment, it puts in issue the fact, whether the liquor seized, was intoxicating liquor or not, and on this issue, the plaintiffs had a right to introduce testimony—to present the proofs of the matters stated in their petition. It is a novel proceeding to present a motion in a cause; to present proof outside of the record, in support of the motion, and that proof, the record of conviction in a criminal cause, if anything, and therefore incompetent to prove the facts on which it was founded, (1 Greenleaf, section 537,) and then deny the plaintiffs the right to introduce testimony.

The plaintiffs commenced suit; defendant filed a motion, alleging facts why the suit ought to be dismissed. The plaintiffs are not permitted to support by testimony, the issues on their side, but defendant is allowed to introduce proofs in support of his motion, in the first instance, and plaintiffs denied the privilege of rebutting. But if the said motion be received as an answer, in bar of the suit, then it is entirely insufficient as to substance. The assertion that it was "intoxicating liquor," will not do. It must be shown by the record—by the answer—that it was kept for the purpose of being disposed of in contravention of law. If it be regarded as a demurrer, then it cannot be sustained, because the facts supporting it, do not appear in the pleading; and it would be as novel a proceeding, to hear testimony in support of a demurrer, as it was to do it in support of a motion of this character.

We now come to the point intended, doubtless, to be decided by this cause—and a point upon which counsel on both sides earnestly ask the court to pass. And that point,

or rather question, is, will replevin lie for liquor seized under the provisions of the act for the suppression of intemperance? It was contended in the court below, that the act for the suppression of intemperance, was exclusive and conclusive; exclusive, in that where it was set in motion, or attached, its provisions furnish the only means of redress, and a person aggrieved was bound to seek his remedy under them; conclusive, in that its judgments, or propriety, or any proceedings under it, could not be inquired into, and might be set up as a bar to any action for damage or for injury done to a person or his property, by the officers of the law, under color of its sanction.

This is, certainly, a very startling doctrine, and should be examined before it is adopted. The doctrine itself, is at war, not only with all the convictions of the student, the practitioner, and the judge, to whom it is presented for the first time, but with all the teachings of all the sages of the law, and with all the written constitutions, state or national, of this country. This is a broad assertion—very broad —and yet it is believed to be essentially true. The student learns, and the sages teach, that every statute is an addition to the mass of pre-existing statutory and common law. Into this mass it falls, like a rain-drop into the ocean, mingling with, influencing, and being influenced by it, forming with it, one entire whole. "And whatever is newly created by statute, draws to itself the same qualities and incidents as if it had existed by common law." 7 Car. & P., 795; 6 Car. & P., 368; 8 Car. & P., 589; Russ & Ry., 106; Bishop's Crim. Law, sec. 75–85. That statutes must be construed in harmony with themselves, with other statutes, and with the common law, so far as practicable; that statutes must have a uniform operation, is enjoined by all the constitutions. In the light of these teachings to the student, the practitioner is confounded when he is told, that if A. goes to my stable and takes, with or without process, wrongfully, my horse, and then steps into my cellar and takes my vinegar, or brandy, if you choose, that I can have a replevin for my horse, and can gain the possession of him immediate-

ly, almost, but that I cannot have the same remedy for my vinegar, or brandy, and, very naturally, inquires why?

In answer, he is, or may be told, that the horse is exempt from seizure, if I am the head of a family, and he is my only horse, or forms a part of my team; and that if I allege those facts in proper form, I may replevy my horse, and have a chance to prove my allegations in the mode prescribed by law. This is all very well; but why will not the same rule not apply to the vinegar or brandy? If I allege that it is mine; that I am entitled to the possession of it; that it is exempt from seizure by any process; why cannot those facts be tried in the mode prescribed by law, and why can I not regain possession of it immediately? Is it argued that any power on earth, can unjustly or wrongfully take my personal property, of any kind, and that I cannot replevy it? If so, I say that the law says, I may regain the possession of any specific personal property, by replevin; and I ask where the exception is? Will any one be good enough to point it out? Suppose I had a large amount of valuable liquors in my possession, as an importer, under the regulations of section two of the liquor law of 1855, say ten thousand dollars' worth, properly in my possession, and with proper intent, and a writ issuing from a justice of the peace, should seize the whole of it, could I not recover the possession in the only mode which the law prescribes, and that without delay? And has not the district court jurisdiction to try the legality of a seizure of property, on process issued by a justice of the peace?

*Henry O'Connor*, for the appellant.

Can the action of replevin be maintained in the case stated? If it can, then certainly the whole object and purpose of the prohibitory law, may be defeated by any and every party who chooses " to put in motion" this machinery. The law provides, (section 9), that upon the information of three persons under oath, &c., the justice shall issue his warrant of search and seizure, to any peace

officer, and that in obedience to the commands of said warrant, the officer shall proceed to search thoroughly said place, and seize the liquor and the vessels containing it, and to keep the same securely until final action be had thereon. Final action, where—how? In ana ction of replevin, before the district court, or in the regular proceedings under this law, before the court whence the warrant issues? Which mode? It is evident, the legislature meant final action under the provisions of sections 10 and 11 of the act. To maintain otherwise, is mockery. Why is the officer required to keep the same securely until final action be had thereon? The very wording of the law, it seems to me, precludes the idea of the owner or claimant of liquor, seized under its provisions, resorting to an action of replevin. At all events, it shows clearly that the legislature intended he should not have that right.

It is to be regretted, that the learned counsel for plaintiffs, while writing his learned and interesting essay on practice and pleadings, did not enter more minutely into the nature and objects of the action of replevin. He does not say so, in terms, but he evidently wishes to be understood, as treating of the writ of replevin, as a writ of right—a high prerogative writ. The main purpose of the action of replevin, as I understand it, is, to test the legality of the detention—(1 Chitty's Pleadings, 186)—to recover property, to the present possession of which the plaintiff is entitled—(Code, section 1995)—not necessarily to try the title to personal property, although often resorted to for this purpose. The person who owns, has the title to personal property, but cannot maintain replevin against the person having the right of possession, while the party having the right of present possession, may maintain this action against the owner.

Now let us go back a moment to the facts in this case. An information, according to the provisions of section 9 of the prohibitory act, was filed—must have been filed—before a warrant issued. The warrant issued—the seizure was made—and the officer, under the command of his

warrant, had it in his custody, to keep securely until final action should be had thereon. All this appears on the face of the petition, in this action of replevin. Who had the right of present possession, at this moment of time? The officer, or the owner—the plaintiffs in this action, or Israel, the defendant? Who, I again ask? And in the language of counsel for plaintiffs, will any one be good enough to point it out, in the light of the law and our present teachings. The question is much easier determined, than that long mooted and still unsettled question, viz: "who struck Billy Patterson?" The peace officer in this case, had the right of present possession, and could maintain that right against all the world, the owner included, until final action was had in the premises, in the manner provided by law. Now, what possible right, privilege, or advantage, has the owner or claimant of this species of property, in an action of replevin, which is taken away from him by the act of January, 1855? None whatever. On the contrary, every possible right, privilege, and advantage which he can have in claiming or defending his property, is expressly secured to him by the provisions of this act. It is made the duty of the justice and peace officer, to give notice, within forty-eight hours after the seizure, to the person described in the information, and to all others interested, or whom it may concern, by leaving a copy at the place, &c., and by posting up on the building, (section 10, act of 1855;) and, at the hearing, the person charged in the information, or any person who claims to be interested, may come in and be made defendant, and any matter which, in an action of replevin, would establish his claim to the property, or his right to th epresent possession of it, would be a good defence to this action, and will secure him a return or re-delivery of the property, without costs or charges. But, if he can maintain his action of replevin, how is it with the state? Is not every purpose and object of the prohibitory law defeated? Whisky is seized to-day, under the act, from George Funk; to-morrow Mr. Hardman replevies

it, as "high wines;" next day, the same article, (changed in color, by the addition of a little logwood, vermilion, and oil of vitriol,) is again seized, under the act, from Hardman; immediately, my friend, Mr. Richman, sues out his prerogative writ of replevin, and claims the chattels, as a superior article of brandy, which he has imported for domestic use, and fears that his hospitalities will be limited, and his health impaired, by the loss of it. What object would be attained by the act, in this view of it, except to create and foster endless litigation. To claim such a construction for it is, it seems to me, neither good law nor good sense. The legislature have the right to limit the operation of the action of replevin, or to abolish it altogether. It is a statutory action. The intention to exclude its operation, in the class of cases to which the one at bar belongs, is, I think, very evident.

But counsel for plaintiffs object to the mode of defence adopted by the state, and says it is an extraordinary office for a motion to perform. It might be said, that the whole proceeding was extraordinary, and no part of it more so, than suing out a writ of replevin in such a case. But, waiving this view of the matter, I think it will be found, that a motion to quash the writ, and dismiss the suit, was the proper practice. In Ohio and New York, and other states, when the action of replevin is limited in its operation, motions to quash and dismiss are every day practice. Wilcox Ohio Forms and Practice, 494; *Spaulding* v. *Spaulding*, 3 Howard' Pr. R., 297; Ib., 377. In this state, special pleadings are abolished, and motions have a much more extended office, than under the old practice. Very often, under our practice, it is made to answer the purpose of a plea in abatement. Sufficient to sustain the motion in the present case, is found on the face of the plaintiffs' petition. Plaintiffs state that the property was seized, by virtue of a warrant under the provisions of the act of January, 1855. It is true he calls it " high wines," and states that the property was exempt from seizure, by such process. Are not those the very questions to be settled by

the tribunal from whence the warrant issues, or when the cause is tried under the prohibitory act? 1. Whether the liquor seized is intoxicating—whether it is whisky or high wines—or low wines, or bad brandy? 2. Whether the same was kept with intent to be sold, in violation of the act for the suppression of intemperance. See sections 10 and 11, act of 1855, 58.

The property is also claimed by Funk & Hardman, while it was seized as being in the possession of George F. Funk. This does not alter the case, because, under the provision of the act of 1855, Hardman and twenty others, as well as Funk, had the right and privilege of coming in and making themselves defendants in the proceeding before the justice, and there set up "vinegar," "high wines," ownership, or "domestic consumption," or any other defence they might have, and make it available, if proved. But counsel for plaintiffs wanted an issue made on the facts, in such form of action as they choose to institute or adopt. They had ample opportunity to take issue on all facts, in the way pointed out by law, and neglected or refused. And they say it is in violation of the provision of the constitution, which provides that all laws of a general nature shall have a uniform operation, &c. Where is the conflict? Does not the act of 1855 operate uniformly? Is it not the same in its operations on the plaintiffs, as on any and all other men in the state? It has been decided by this court to be constitutional. A singular uniformity would that be, which would sacrifice a law of the state, in which all her citizens are deeply interested, to a supposed abstract right of one man, or a dozen, especially when it is seen his notion, or whim, rests on a mistaken idea of what his rights really are.

The gentleman says it was argued in the court below, that this law was exclusive and conclusive; be it so. But, certainly, no such deductions were attempted to be drawn from that proposition, as the gentleman puts in the mouth of the person who urged the argument. That the law is exclusive in its jurisdiction upon the subject matter em-

braced in section 9, until final action be had thereon, is evident, at least to my mind, from the view already taken of the law. That a judgment of the court, founded on evidence, as it must be under that law, is conclusive as to the facts found, viz : the character of the liquor—whether it is intoxicating liquor, and whether it was kept with intent to be sold in violation of law—is, it seems to me, equally clear. Indeed, it is a proposition that no lawyer will question. It is claiming no more for it than for any other law. Be it remembered, there are no defaults under this law—no *ex parte* proceedings. The party must be served with notice. The court must hear evidence. What judgment will be conclusive, if this will not ? But suppose the justice issues the warrant without any information, or the officer seizes without a warrant, or fails to give the required notice, or any other material defect is found in the proceedings, of course, the officer, and all parties who acted with him, would be liable in trespass. No one claims, and no one ever did claim, that the law, or the judgment of the court, would be so conclusive, as to bar him of his rights, when sought in the proper way.

Very much is said, expressly and by inuendo, about this law, in the argument of counsel for plaintiffs, and there seems to be an evident attempt, in the argument, to invoke popular and professional contempt on it. This can have nothing to do with the case. I am not the special defender of that law, if it needs any. All will concede that, at the time of its passage, as well as at present, some stringent law was necessary on the subject. That this law has met with so little practical success, is much more a matter of reproach to the people of the state, than to the legislature, or the judiciary. Certainly, the late modification of it, seems to be a "step backwards in progress." I believe that this case was decided in the court below, on a sound and true construction of the law, and that the decision will be affirmed in this court.

STOCKTON, J.*—At common law, the owner of a chattel might, by the action of replevin, take it from the possession of any person who unlawfully held it, unless it was in the custody of the law. If wrongfully taken by virtue of legal process, the remedy of the owner was by action of trespass, or trover, against the officer; for the common law would not grant process to take from an officer, goods which he had taken by legal process already issued. *Cromwell* v. *Owings*, 7 Harr. & Johnson, 55; *Ilsley* v. *Stubb*, 5 Mass. 280. Our statute has, however, so far altered the common law, that a person entitled to the present possession of personal property, wrongfully detained from him, on making oath that the property was not taken from him by any legal process, or if so taken, that it was exempt from seizure by such process, may have the possession restored to him. Code, section 1995. The exemption contemplated by this section, extends only to the articles enumerated in sections 1898 and 1899 of the Code, and was intended for the benefit of the particular parties indicated. The articles so exempt, cannot be taken in execution, and if taken, their possession may be recovered under writ a of replevin, by the defendant in execution.

The averment of the plaintiffs' petition is, that "although the property was taken from them by a pretended legal process, yet that the same was exempt from seizure by such process; and that the alleged cause of the seizure and detention thereof, is that the said property was kept by plaintiffs, for the purpose of being sold as intoxicating liquor, in violation of the provisions of the prohibitory liquor law, which alleged cause they aver to be untrue. The averment that the property was exempt from seizure, would have been sufficient under the Code, (section 1995,) had not the further fact been disclosed, that it was seized by defendant, as intoxicating liquor, by virtue of a search warrant issued under the provisions of the prohibitory liquor law. When

*Wright, C. J. dissenting.

proceedings are commenced under the "act for the suppression of intemperance," by the seizure of intoxicating liquors, alleged to be owned and kept for sale in violation of law, it is not competent for a party, to take the case away from the tribunal whose jurisdiction has attached, by instituting an action of replevin, and regaining possession of the liquors. He cannot so bring about a change of forum—he cannot so change a criminal, into a civil proceeding.

The prohibitory liquor law provides for the final hearing and adjudication of all causes originated under it. The officer to whom the warrant is delivered, is to execute it, and make return of his doings, and securely keep the liquors seized, until final action. Any person claiming an interest in the liquors seized, may appear before the justice, and show cause why they should not be adjudged forfeited, as, that they were not owned or kept with intent to be sold in violation of law. He may have a jury to try the issue; he may introduce testimony; he may appeal to a higher court, from any judgment of condemnation or forfeiture; and if it is decided that the liquors seized, are not liable to be forfeited, he may have them, with the vessels in which they are contained, restored to the place where they were seized. To suffer a party, in an action of replevin, to take the liquors out of the hands of the officer seizing the same, would be an interference with the administration of justice in criminal proceedings, and would defeat the whole object and intention of the prohibitory liquor law. By that law, the keeping of intoxicating liquors for sale, is prohibited; the liquors so kept, are declared a nuisance, and must be forfeited and destroyed. It is easy to perceive, that if they may be replevied out of the hands of the officer seizing them, there will be very few instances in which the object of the statute will be attained, by the destruction of the liquors kept for sale contrary to law. See *Musgrave* v. *Hall*, 40 Maine, 498.

In this view of the requirements of the law, we think

the district court did not err in dismissing the suit, on the motion of the defendant. The plaintiffs showed by their petition, that they were not entitled to the relief sought in the action of replevin. The liquors were in the custody of the law, by virtue of process issued in a criminal proceeding, and were awaiting the action of the court under the law, by which it was to be ascertained, whether or not they were liable to be forfeited, and to a judgment that they be destroyed. While such proceedings are in progress, the liquors are not the subject of an action of replevin. An attempt by the owners to regain their possession, by a writ of replevin, would, at common law, be deemed a contempt of the jurisdiction of the court issuing the warrant. Intoxicating liquors, kept for sale in violation of law, are not regarded as property. They are outside of the protection of the law, and unless the party suing, avers and shows that they are in his possession with lawful intent, and that he has been illegally deprived of the same, no action can be maintained for their recovery or possession, whether they are in the custody of the law or not. Act of January 22, 1855, section 15.

Some question has been made in the argument, whether it was regular for the court to interpose its authority, on a mere motion to dismiss the suit, without permitting the plaintiffs to prove that they possessed the liquors with lawful intent, or to prove any other averment of their petition. If this is a hardship, it is one which the plaintiffs must bear, as the penalty of having interfered to take the property out of the custody of the law, when they had no right to do so. The averments of the petition, that the property was exempt from seizure on legal process; that the plaintiffs are entitled to the present possession thereof; and that it is wrongfully detained by defendant, are all answered by the plaintiffs themselves, in their petition, when they come to show, as the alleged cause of its detention, that it was kept by them for the purpose of being sold as intoxicating liquor, in violation of the provisions of the "act for the suppression of intemperance," and as such was seized.

The averment that "the liquors were lawfully in the possession of plaintiffs, for the purpose of being manufactured into vinegar," becomes an immaterial one. If proved, it would not be sufficient to sustain plaintiffs' action. Nor was it necessary to the security and protection of plaintiff s' rights, that they should have been permitted to prove it in this action. The privilege of establishing their right to the property, is as abundantly secured to them under the act aforesaid, in the trial before the justice of the peace, as in the action of replevin. The only question is, with whom, and in whose custody, shall the liquors remain, until the question of right is decided? We think they remain with the officer, in the custody of the law.

To authorize the court to dismiss the action, the motion to dismiss must be based upon matters appearing upon the face of the proceedings. In such case, a demurrer, reaching to the foundation of plaintiff's right of action, may answer the same purpose. No testimony, outside of the record, can be introduced in support of the motion. To authorize the admission of testimony, the facts necessary to be proved, must be averred by way of plea, in the nature of a plea in abatement to the action. On such a plea, an issue may be joined, and the facts relied upon to dismiss the suit, shown in the ordinary way. As sufficient appeared upon the face of the petition, to authorize the dismissal of the suit, the admission of testimony in support of the motion, though erroneous, was error without prejudice to plaintiffs.

It is assigned for error by plaintiffs, that the court rendered judgment against them after the suit had been dismissed. The record shows, that after the dismissal, the defendant applied to the court to have his damages assessed by a jury; that a jury was waived by both parties, and the cause submitted to the court; and the value of the liquors replevied being conceded to be of the value of seventy-five dollars, judgment was rendered against plaintiffs for a return of the property to defendant, and, in default

thereof, that defendant recover of plaintiff the sum of seventy-five dollars.

By the Code, (sec. 2001), it is provided that "if the plaintiff fail to establish his right to the property, the defendant shall recover such damages as, under the circumstances, he shows himself entitled to." The objection urged by plaintiffs is, that after the dismissal of the suit, no judgment should have been rendered against them for the return of the property, nor, in default of such return, for their value. The question then arises, whether the defendant, upon the suit being dismissed, shall be driven to his action on the plaintiff's bond, or whether he is entitled to a judgment for the return of the liquors, and for their value, in default of their return. We are of opinion, that the defendant is not driven to his action on the bond, and that he is entitled to a judgment for the value of the property replevied; or, in the language of the Code above cited, he shall recover such damages as, under the circumstances, he shows himself entitled to. We do not understand the objection of the plaintiffs to be, that the amount of the damages allowed against them, is too large. From the effect of such judgment, if any prejudice to their interests was wrought by it, plaintiffs might easily have relieved themselves, by returning the property illegally replevied by them.

Judgment affirmed.

WRIGHT, C. J., *dissenting.*—I cannot concur in all that is decided and held in the foregoing opinion. The points of difference, I will briefly state.

*First.*—I understand that the exemption contemplated by section 1995 of the Code, refers not only to the articles enumerated in sections 1898 and 9, but also to property which is not liable to seizure, from the fact that it is owned by the plaintiff in replevin, and not by the defendant on the attachment, execution or other process. And so it has been ruled. *Miller* v. *Bryan,* 3 Iowa, 58; *Smith* v. *Montgomery, ante,* 370.

Funk & Hardman v. Israel.

In the second place, while I might hold that the party against whom proceedings were commenced under the "prohibitory liquor law," could not maintain replevin to take the liquor from the custody of the officer, I cannot go so far as to say, that a third person, in no manner named or implicated in the proceedings, may not have the action. In this case, I do not think it was necessary for this court to have gone beyond the first inquiry. To dispose of the case, we were not strictly required to determine whether a third person could or could not bring replevin. And, therefore, when the question properly arises, I do not wish to be considered as bound by anything said upon the subject in the opinion of the majority. I can readily suppose many cases, in which to deprive a third person of the right to replevy goods, would amount virtually to a denial of justice. But, under the suggestions above made, I need not now discuss the question.

Again: I am clearly of the opinion, that it was improper to render judgment for the value of the liquors, upon the decision of the motion. I understand that to entitle a defendant in replevin, to recover for the value of the property, where return is awarded him, he must have the title, or be the owner of it. If he has a right to possession, the plaintiff cannot recover, though he (the plaintiff) may have the title. If the defendant has only the right to the possession, and the title should be in the plaintiff, or any other person, then defendant is entitled to recover, not the value of the property, but damages for the detention. If his right to the possession still continues at the time of judgment, then he may have an order for the return, and the necessary process may issue. Should the return not be made, he may recover upon the bond, whatever damages he may have sustained, whether before or after the judgment.

And where the defendant, as an officer, holds liquors, from the sale or disposition of which, neither he nor the state, has the right to derive any, or the least, profit, I cannot understand why he is entitled to judgment for the

value of the liquors. I ask, who is entitled to the amount of this judgment? Does it go into the pocket of the officer—into the school fund—the state or county treasury, or where? What consistency is there in saying, that liquors shall not be kept, except under particular circumstances; that they may be seized and destroyed; that when condemned, they cease to be property, and have no further value; and yet permit an officer to recover the value of the very liquors which are of the prohibited character? The statement of the proposition, I think, is its best refutation.

It is objected, that unless the officer can recover the value of the liquors, then those engaged in the prohibited traffic, would invariably bring replevin, when their liquors are seized—refuse to return, when return should be adjudged—and thus have it in their power to defeat the main object of the law. I answer, *first*, that such proceedings would by no means, prevent their conviction and punishment. The destruction of the liquors might not be accomplished, but the offender could be punished, and the future traffic by him completely prevented. In the *second* place, whatever force there is in the objection, is better addressed, I think, to the law making power, than to the courts. The remedy must come from that department, and cannot be given by this.

For these reasons, I do most respectfully dissent from the foregoing opinion.