## FORFEITURE OF AUTOMOBILE USED IN TRANSPORTATION OF LIQUOR.

Common Pleas Court of Franklin County.

B. JOHN BUELL v. HARRY E. FRENCH ET AL.

Decided. February 28. 1922.

*Things Used as Facilities in the Violation of Law—And Subject to Forfeiture Because so Used—Not Subject to Replevin by an Owner Innocent of such Use, When—Status of Owner in the Proceeding for Forfeiture—Search and Seizure of Forbidden Things Distinguished from Seizure of Private Papers for Use as Evidence Against the Owner.*

An automobile seized while being used in the unlawful transportation of liquor, and held by officers of the law under a proceeding *in rem* for its forfeiture and sale, instituted in another court of competent jurisdiction under the provisions of Section 6212-43, is not subject to replevin.

*B. F. Levinson,* attorney for plaintiff.

*C. A. Leach* and *E. W. McCormick,* attorneys for defendant.

SCARLETT, J.

This case is before the court on the motion of Chief French and Corporal Baker of the Columbus police department for an order directing Sheriff Holycross to return an automobile taken from them for the reason that the writ of replevin issued in this case was wrongfully and fraudulently procured by the plaintiff.

The motion is supported by affidavits which present the following undisputed facts: The defendant Baker, a police officer of the city, caught one Ashley Pendall while he was transporting whiskey in the auto in question through the streets of the city, and arrested him therefor, seizing both the liquor and the auto as provided by Section 6212-43, General Code (passed April, 1921—109 O. L., 95). An affidavit was then filed against said Pendall in the municipal court, and he was convicted of the unlawful transportation and fined $300 and costs. An application, in the nature of an information or libel *in rem,* for the sale of said auto under the provisions of said Section 6212-

43, was then filed (November 29) by the said Baker in said court, and set for hearing on December 2. This plaintiff's attorney then appeared before said court, specifically denying any entry of appearance, and demanded said auto for the owner, although refusing in plaintiffs name to give bond as required by the law, or to appear in person to show "good cause." He then received or procured a copy of the application *in rem.* Plaintiff, although thus informed of the proceeding in municipal court, filed an affidavit herein and caused the writ in replevin to issue, and said auto is now held by the sheriff, who was restrained by the court from turning the machine over to the plaintiff herein, pending the decision on this motion.

The defendants contend that this court has control of its own process, and if *upon the undisputed facts,* the affidavit, supporting the issuance of the writ, was false either because of a fraudulent intent or because of ignorance of the law, the return of the goods so seized may be ordered. (See *Xenia Twine & Cordage Co.* v. *Hoover & Allison Co.,* 25 Law Bul., 10; *O'Reilly* v. *Good,* 42 Barb., 521, 34 Cyc., p. 1438, note 77; *Rice* v. *Thayer* (Mo. App.), 217 S. W., 576.)

Plaintiff contends that the allegations of the affidavit are not false because he is not a party to the municipal court proceeding, and because that proceeding is not *in rem.* He cites many cases in which replevin was sustained in favor of B, when execution issued in another case against A had been wrongfully levied on B's goods. In these cases, however, the court had jurisdiction over A only, and as the proceeding was not *in rem,* the right to hold the goods depended entirely upon whether they were A's goods. Plaintiff says the original seizure of the auto was at most an execution on Pendall's goods, and as the auto was and is not Pendall's the court (municipal) acquired no jurisdiction.

This controlling question is therefore one of law, and if plaintiff is wrong the court cannot permit him to benefit by his ignorance of the law on a false affidavit.

It is apparent that much depends upon the nature and effect of the original seizure and proceedings in municipal court under

Section 6212-43, General Code. The admitted facts show that the defendants have merely followed the mandate of this statute, which provides that the officer "shall take possession of this automobile," when intoxicating liquors in transportation are found therein, and "shall at once proceed against the person arrested," returning the machine to the owner upon bond. It is further provided that upon "conviction of the person so arrested, the court shall order this liquor destroyed, and *unless good cause is shown by the owner,* shall order a sale by public auction of the property seized," the price thereof to be paid into the state liquor fine fund after deducting the costs of the sale and all liens established "as being *bona fide* and as having been created without the lienor *having any notice* that this carrying vehicle was being used or was to be used for the illegal transportation of liquor."

This section is an exact copy of Section 26 of title 2 of the national prohibition act, commonly known as the Volstead law. The forfeitures here provided for are somewhat common in federal statutes and cases. In fact Chief Justice Marshall's epoch-making opinion in *Slocum* v. *Mayberry et al.,* 2 Wheat., 1 (Feb. 12, 1817), dealt with the right of a state court to issue a writ of replevin to take a vessel and cargo seized by federal officers under an act of congress. He said in part, page 9:

"The party supposing himself aggrieved by a seizure cannot, because he considers it tortious, replevin the property out of the custody of the seizing officers, or of the court having cognizance of the cause. If the officer has a right, under the laws of the United States to seize for a supposed forfeiture, the question, whether that forfeiture has been actually incurred, belongs exclusively to the federal court, and cannot be drawn to another forum; and it depends upon the final decree of such courts whether such seizure is to be deemed rightful or tortious."

That plaintiff is wrong in his contention that this seizure by Baker and the following steps are not a proceeding against property is quickly apparent from a consideration of the many federal cases, the doctrine of which is well summarized in the very recent case of *Goldsmith-Grant Co.* v. *United States,* 254

U. S., 505, involving an automobile, which was used to convey intoxicating liquor with intent to defraud the United States of the tax due thereon, in violation of a statute providing for the forfeiture of a conveyance. so used. The plaintiff therein sold the auto to the offender under a contract by which title was retained until paid for, and knew nothing of the criminal and fraudulent use of the car. In reply to the contentions based on plaintiff's innocence, namely, taking of property without due process and a strict construction of statutes against such unfair intent, the court summarized the peculiar status of some *objects* as *offenders against the law* in the following words (p. 510):

"In breaches of revenue provisions, some forms of property are facilities, and therefore it may be said that Congress interposes the care and responsibility of their owners in aid of the prohibitions of the law and its punitive provisions by ascribing to the property a certain personality, a power of complicity and guilt in the wrong. In such case there is some analogy to the law of deodand by which a personal chattel that was the immediate cause of the death of any reasonable creature was forfeited. To the superstitious reason to which the rule was ascribed, Blackstone adds 'that such misfortunes are in part owing to the negligence of the owner, and therefore he is properly punished by such forfeiture.' And he observed, 'Alike punishment is in like cases inflicted by the Mosaical law: "if an ox gore a man that he die, the ox shall be stoned, and his flesh shall not be eaten." And among the Athenians, whatever was the cause of a man's death by falling upon him, was exterminated or cast out of the dominions of the republic.' " See also *The Blackheath,* 195 U. S., 361, 366, 367; *Liverpool, etc., Navigation Co.* v. *Brooklyn Terminal,* 251 U. S., 48, 53.

Page 513:

"It is the illegal use that is the material consideration, it is that which works the forfeiture, the guilt or innocence of its owner being accidental. If we should regard simply the adaptability of a particular form of property to an illegal purpose, we should have to ascribe facility to an automobile as an aid to the violation of the law. It is a 'thing' that can be used in the removal of 'goods and commodities' and the law is explicit in its condemnation of such things."

So also the mortgage of an automobile used to import intoxicating liquors into old Indian Territory was denied any relief, notwithstanding its entire ignorance of the use, because the law makes the property the offender, namely, the means or method used in the violation of the law, as Congress had a right to do. *Commercial Investment Trust Co.* v. *United States,* 261 Fed., 330.

It is clear therefore that Congress and our state Legislature has the power to provide for the seizure, condemnation and forfeiture of an auto used in the transportation of liquor in violation of law no matter how innocent the real owner may be of its unlawful use (with the possible exception of a case of theft, 254 U. S., 512).

The owner knowing the adaptability of his property for law violation purposes must so control it that it is not so used. Such a proceeding is a proceeding *in rem,* and the seizure, if subsequently sustained by court decree, divests the owner of title in the property from the date of the seizure. The owner, although not normally a party, is nevertheless substantially a party and may appear and make defense on the statutory issue, namely, was the automobile used as an agency for the violation of the statutes. (Corp. Jur., 25 p. 1174, Sec. 59.)

What has been done by Congress in the Volstead act (Sec. 25) and by our Legislature in our identical law? The rigors of the federal statutes above referred to have been abated to permit the owner to show "good cause" why the auto should not be sold, and the lienor, who has no control of the use and is therefore more blameless than any owner can be, to show that he did not have any notice of the unlawful use. Since the legislative right to decree an absolute forfeiture exists, regardless of the owner's innocence, the owner cannot question the terms upon which that absolute forfeiture is conditioned or abated, but must comply faithfully therewith. Under this statute he must appear in the form where the jurisdiction *in rem* exists and show good cause why the court convicting the offending person should not order a sale of the offending automobile.

As noted by several federal district judges, the term "good

cause'' has not been reduced to legal certainty, or authoritatively defined. One able judge says (Westenhaver, D. J., in 272 Fed., 492):

"In my opinion, however, good cause is not shown unless the owner can prove clearly and satisfactorily that his automobile was used, not only without his knowledge and consent, but in excess of any authority, express or implied, which may have been conferred by him upon the person using it. I am further of the opinion that the owner must remove any imputation that he negligently entrusted his automobile to an employer or other person under circumstances from which a careful and prudent person ought to have foreseen that it was likely to be thus illegally used."

And another (Bourquin, D. J., in 273 Fed., 278) says:

"An owner may assert that he is free from complicity in the illegal use, and had no notice such use was contemplated, and yet, by reason of neglect, indifference, consent or acquiescence manifested in advance, or condonation or ratification afterwards, or other fault or inequitable conduct, he may fail to show good cause against forfeiture and sale."

Another able Ohio district judge (Peck, in *United States* v. *Burns,* 270 Fed., 681), holds that the owner must show an absence of guilty knowledge, as the legislative intent was to hold the owner to a degree of care at least as great as that required of a lienor, who has less control.

In the light of these principles, what is the situation of this plaintiff, who for some reason refuses to appear and show "good cause" in the proper court, which has jurisdiction of the thing and of the forfeiture proceedings. Can he obstruct the proceedings in municipal court by taking, on a writ of replevin, the thing which is the source of the court's jurisdiction, until such a time as the replevin case is heard on its merits. If so, then liquor or stolen property, held as evidence in the direct prosecutions can be so taken to the serious obstruction of justice.

Some interesting cases have developed from similar attempts. In an early case (6 Gray, 491) the Supreme Court of Massachusetts, holding that no right of replevin existed at common

law or by statute against a constable who in accordance with a statute seized liquor transported in violation of law, quoted with approval the ruling of Chief Baron Eyre in *Cawthorne* v. *Campbell,* 1 Anstr., 212, that a seizure by means of a writ of replevin from an officer in charge of property in a proceedings for forfeiture "would be a contempt of court, for which an attachment (arrest) would be granted instantly."

In the case of *State* v. *Harris & Folsom,* 38 Iowa, 242, the Supreme Court of Iowa in sustaining an indictment for a similar offense said (p. 246):

"Now it has been held by this court that intoxicating liquors seized by virtue of a warrant issued upon an information for their forfeiture, are not the subject of replevin. 5 Iowa, 438. To take them from the custody of the law by such means would not only be illegal, but would subject the party also to punishment as for contempt by the court which issued the process under which they were seized."

In other cases it has been repeatedly held that an action in replevin did not lie for the recovery of liquors or automobiles, seized and held for forfeiture or as evidence in cases under the prohibition liquor laws, while the proceedings thereunder were in progress. In each case a motion for dismissal, for the return of the property, for a non-suit or for a directed verdict, was sustained.

In *Link* v. *Fullerton,* 83 Iowa, 192, the possession of officers, who seized an interstate shipment of liquor in the original package, was sustained in a replevin suit by the consignor, and a directed verdict for the full value was ordered, it being held that the officers had a right to hold possession for determining whether the laws of the state were being violated, although a forfeiture of this interstate shipment was prohibited under *Leiy* v. *Harden,* 135 U. S., 100. So also in *Fries & Co.* v. *Perch,* 49 Iowa, 351, and *Funk & Hardman* v. *Israel,* 5 Iowa, 438.

The case of *Allison* v. *Hern, as Chief, etc.,* 102 Kansas, 48, presents almost identical facts. The police seized a taxicab and driver on the streets under an ordinance which directed the seizure and destruction of all property kept for the main-

tenance of a liquor nuisance. The owner appeared in police court and demanded his machine, and then sued in replevin and secured judgment in the district court. The Supreme Court reversed, holding that "pending such determination (of the seizure proceedings) the vehicle was rightfully in the custody of the officers and not the subject of replevin by the owners." (Syl.)

The court further said (p. 52):

"Under the law and under the ordinance the officers had a right to seize it, they had a right to hold it, they had a right to ascertain judicially whether it had been so used; and if so, then they had resting upon them the duty to destroy it. *Regardless of notice* to the owner or to the driver pending such judicial ascertainment, the vehicle was in the custody of officers and, therefore, in the custody of the law and *not subject to replevin.*"

The opinion in the case of *Greentree* v. *Wallace, Sheriff,* 77 Kansas, 149, another unsuccessful attempt to replevin liquors seized as a liquor nuisance and held for hearing, is instructive, the court pointing out (1) that as between a general replevin statute and a liquor nuisance statute "*the specific procedure should be held applicable in exclusion of the other*" (p. 153; and (2) that the question at issue was not the relative rights of the owner and the sheriff, but the guilt or innocence of the liquor, and the owner should be allowed to intervene only for the purpose of answering the "complaint made against such intoxicating liquors."

The impropriety of attempting to secure the issuance of a writ of replevin for stolen property, held by the police as evidence in pending prosecutions, has also been emphasized in a related set of cases, among which the *Simpson* v. *St. John,* 93 N. Y., 363; *McDonald* v. *Weeks,* 2 Tenn. Civ. A., 600; *Stock Co.* v. *Moore,* 13 Appl. D. C., 78. The principle of the cases is the same, and it is apparent how greatly any such interferences by replevin with this "custody of the law" would obstruct the administration of justice.

The only exception to the rule that this "custody of the law" cannot be interfered with by replevin is when the par-

ticular custody or seizure is based upon an unconstitutional statute or ordinance. Is Section 6212-43 unconstitutional? The cases above cited certainly answer this question in the negative, but let us consider several suggested defects, the seizure without a warrant and the insufficient notice to the owner.

The statute authorizes the arrest upon view by police and other peace officers of one engaged in transporting intoxicating liquors, and the seizure of the liquors and the automobiles. Is this an unreasonable search and seizure. At common law and by the statutes of the United States and 32 states, including Ohio (G. C., 13492), peace officers are in duty bound to arrest and detain one committing a misdemeanor in their presence, until a warrant can be obtained, and incidentally they have the right to search the person and seize any property "believed to have been used by him for the purpose of committing the offense." (*Dalton* v. *Brien*, 16 Cox Crim Cases, 245). As said by Justice Bradley (*Boyd* v. *United States*, 116 U. S., 623): "The search for and seizure of stolen and forfeited goods or goods liable to duties and concealed to avoid the payment thereof, are totally different things from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained or of using them as evidence against him. The two things differ *toto caelo*. In the one case the government is entitled to the possession of the property; in the other it is not" (citing common law and statutory precedents).

In Ohio we need search no farther than *Ballard* v. *State*, 43 O. S., 340, holding that a town marshall is authorized, without warrant, to arrest a person found on the public streets of the town carrying *concealed* weapons contrary to law, although he had no previous knowledge of the fact, if he act *bona fide* and upon such information as induces an honest belief that the person arrested is in the act of violating the law. Section 6212-43 does not contain a broader grant of power than this.

There is no taking of property without due process. The property is the offender and has its day in court, and the owner,

while not a necessary party and while notice need not be given to him, may appear and make defense for the property as to its guilt or innocence as an agency for the commission of the crime. This issue is tried as a civil case. (See *Grant Co.* v. *United States,* 254 U. S., 505.) This procedure alone complies with the requirements of due process, but our statute is more liberal in that it offers the owner an additional issue, namely, his own innocence of the unlawful use, the determination of which seems to be a duty of the judge, and also provides for a publication of notice to the owner before sale if no claimant appears in ten days. Certainly the owner has no constitutional cause of complaint. (See also *State* v. *French,* 71 O. S., 186, 200.)

It remains only to decide whether the court controls its own process to the extent argued by defendants in support of the motion. On a motion of this sort, the court cannot decide the question of title or determine any issue of fact. The illegality of this replevin is clear, under the decisions quoted at length, if the defendants, officers described in 6212-43 G. C., were holding the property in question in pending proceedings in municipal court under Section 6212-43. The petition herein proves one fact, and the affidavit of the clerk of the municipal court of Columbus supplies a sworn copy of the pending application in said court for the sale of the automobile in question under Section 6212-43. No question of any error in the municipal court proceedings can be raised collaterally in this replevin suit as all such questions must be first determined by that court, and may then be reviewed in the statutory manner. In the light of these primary facts and the cases cited above it is apparent that the process of this court was misused either because of ignorance of the law or with intent to obstruct the administration of justice. To correct such an abuse the court will consider not only its own record but proof of the pendency of the prior proceeding in a court of competent jurisdiction, qualified to hear both the criminal and civil features of the unusual proceedings.

The Court of Appeals of the District of Columbia suspended

a writ of replevin "upon its being made to appear that the property attempted to be replevined is held as evidence against persons charged with crime." A writ of replevin was set aside upon proof that the property had been taken for taxes, proof being made by the affidavit of a deputy collector of taxes, in *O'Reilly* v. *Good,* 42 Barb., 521. Proof of the "custody of the law" has been received in other cases upon similar motions when the affidavit for replevin was either false or omitted any such negative averment. *Cordage Co.* v. *Allison Co.,* 25 Weekly Law Bull., p. 10; *Rice* v. *Thayer* (Mo. App.), 217 S. W., 576; 34 Cyc., 1438. The principle underlying all cases is the same, namely that the court can correct any abuse of its process which results in interference with or obstruction of administration of justice or accomplishes a prohibited purpose.

The motion of the defendant is therefor sustained and the sheriff is ordered to return the automobile to the possession of the defendants.